STATE OF CONNECTICUT *v.* IAN WRIGHT
(AC 28633)

McLachlan, Lavine and Robinson, Js.

Argued January 23—officially released April 22, 2008

*Ian Wright*, pro se, the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The pro se defendant, Ian Wright, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence,[1] filed pursuant to Practice Book § 43-22,[2] on the ground that it lacked

[1] On December 18, 2006, the defendant filed his pro se motion to correct an illegal sentence. After the court dismissed his motion, he applied for a waiver of fees, costs and expenses, and for the appointment of counsel to prosecute an appeal from that dismissal. On February 26, 2007, the court granted the fee waiver application but denied his request for the appointment of counsel. On March 14, 2007, the defendant filed this pro se appeal.

After the defendant filed his appeal, our Supreme Court decided *State* v. *Casiano*, 282 Conn. 614, 922 A.2d 1065 (2007). The court held that an indigent defendant is entitled to the assistance of counsel in connection with a claim of an illegal sentence. Appointed counsel is required for the purpose of determining whether a sound basis exists for filing a motion to correct an illegal sentence. If such a basis is found to exist, the appointment of counsel will extend to representing the defendant in the preparation and the filing of the motion and, thereafter, in connection with any direct appeal from the denial of the motion. Id., 627–28.

On July 26, 2007, this court, sua sponte, issued the following order in this case: "In accordance with *State* v. *Casiano*, [supra, 282 Conn. 614], the defendant shall be permitted to file a motion for appointment of counsel within twenty days of this order with the trial court. Should the defendant qualify, counsel will be appointed to: (a) make a determination as to whether there exists a sound basis for filing a motion to correct an illegal sentence and (b) if counsel determines that a sound basis exists, represent the defendant."

The defendant did not file a motion for the appointment of counsel with the trial court at any time after this court issued that order. Consequently, he is proceeding pro se in this appeal.

[2] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

jurisdiction to consider the motion. On appeal, the defendant claims that the court had jurisdiction to correct a sentence that violated his constitutional protection against double jeopardy. The defendant's claim is merely a collateral attack on his conviction, and we therefore affirm the judgment of the trial court.

The defendant was charged and convicted, after a jury trial, of murder in violation of General Statutes § 53a-54a (a), as enhanced by General Statutes § 53-202k, and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. At trial, evidence was presented that the defendant and his brother, David Wright, were at the Jamaican American and Puerto Rican Club in Bridgeport on October 15, 2000. Late that evening, they entered a hallway near the restrooms and engaged in a fight with Wilfredo Sanchez. The defendant and his brother drew their guns and fired them, hitting Sanchez and John Williamson, a bystander. Sanchez died of his injuries. *State* v. *Wright*, 77 Conn. App. 80, 822 A.2d 940, cert. denied, 266 Conn. 913, 833 A.2d 466 (2003).

The prosecution's theory was that the defendant was either the shooter or an accessory to his brother, who was the shooter. Although neither the defendant nor his brother testified at trial, the defense strategy was to suggest that David Wright had shot Sanchez without the defendant's knowledge or participation. At the conclusion of the evidence, the jury found the defendant guilty of both charges. Upon being polled, the jurors indicated that the defendant was guilty of murder as an accessory. The court accepted the verdict and rendered judgment accordingly. On March 22, 2002, the defendant was sentenced to a total effective term of thirty-five years incarceration. This court affirmed the judgment of conviction. Id.

On December 18, 2006, more than three and one-half years after the date of his sentencing, the defendant

filed a pro se motion to correct an illegal sentence pursuant to Practice Book § 43-22. The court filed its memorandum of decision on January 11, 2007, dismissing the defendant's motion on the ground that it lacked subject matter jurisdiction to entertain the claim. The court concluded that "[t]he sentence in question does not exceed statutory maximum limits, is not ambiguous or internally contradictory [and does not] abridge what is asserted to be a double jeopardy right." This appeal followed.

The defendant claims that the court had jurisdiction to correct his sentence because it violated his constitutional protection against double jeopardy.[3] Specifically, he argues that he could not be convicted as an accessory to murder because the information did not include an accessorial liability charge. He claims that the polling of the jurors demonstrated that he was "acquitted" as being the principal in the crime. For that reason, he argues that the sentence imposed for his conviction as an accessory to murder violates the prohibition against double jeopardy.[4]

The defendant has misunderstood the nature of the charge against him and has misstated the law of accessorial liability. The defendant's argument presupposes that there are two independent crimes, the crime of murder and the crime of being an accessory to murder. "[T]here is no such crime as being an accessory; the defendant was charged with [one] substantive offense

---

[3] The issue of subject matter jurisdiction presents a question of law over which our review is plenary. *State* v. *Carmona*, 104 Conn. App. 828, 832, 936 A.2d 243 (2007), cert. denied, 286 Conn. 919, 946 A.2d 1249 (2008).

[4] "The double jeopardy clause of the fifth amendment to the United States constitution, which is applicable to the states through the due process clause of the fourteenth amendment, protects against multiple punishments for the same offense in a single trial. . . . [Our Supreme Court has] also held that the due process guarantees of article first, § 9, of the Connecticut constitution include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Moore*, 100 Conn. App. 122, 139, 917 A.2d 564 (2007).

. . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." (Internal quotation marks omitted.) *State* v. *Harris,* 198 Conn. 158, 163, 502 A.2d 880 (1985). "This state . . . long ago adopted the rule that there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility." Id., 164. The defendant is incorrect, therefore, when he argues that his liability turns on whether he was found to be a principal or an accessory. Those labels are hollow. See id., 165.

The defendant insists that he was "acquitted" of being a principal to the crime of murder. The jury did not acquit the defendant, it found him guilty of murder. Upon the polling of the individual jurors, each juror specifically indicated that the defendant was guilty of murder as an accessory. "A defendant may be convicted as an accessory, even if charged only as a principal, as long as the evidence presented at trial was sufficient to establish accessorial conduct." *State* v. *Bagley,* 35 Conn. App. 138, 142, 644 A.2d 386, cert. denied, 231 Conn. 913, 648 A.2d 157 (1994).[5] Accordingly, the defendant has no colorable double jeopardy claim. Although the defendant has framed his issue in terms of a double jeopardy violation, he actually is claiming that because his conviction as an accessory is illegal, his sentence is necessarily illegal. For that reason, he claims that Practice Book § 43-22 is the proper procedural vehicle for challenging that illegal sentence.

"[A] challenge to the legality of a sentence focuses not on what transpired during the trial or on the underlying conviction. In order for the court to have jurisdiction over a motion to correct an illegal sentence after the

[5] The defendant's conviction was affirmed on direct appeal. *State* v. *Wright,* supra, 77 Conn. App. 80. This court concluded that "there was ample evidence to support the jury's finding that the defendant was guilty of murder as an accessory." Id., 93.

sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." *State* v. *Lawrence*, 281 Conn. 147, 158–59, 913 A.2d 428 (2007)."

In the present case, the defendant's claim, by its very nature, presupposes an invalid conviction. The defendant does not claim that the sentence he received exceeded the maximum statutory limits prescribed for the crime for which he was convicted. He also does not claim that he was denied due process at his sentencing hearing or that his sentence is ambiguous or internally contradictory. If the defendant's claim were to fall into any of those categories, Practice Book § 43-22 would be the proper vehicle by which he could invoke the trial court's jurisdiction. Because the defendant's claim falls outside that set of narrow circumstances in which the court retains jurisdiction over a defendant once that defendant has been transferred into the custody of the commissioner of correction to begin serving his sentence, the court lacks jurisdiction to consider the claim pursuant to a motion to correct an illegal sentence under Practice Book § 43-22. See *State* v. *Lawrence*, supra, 281 Conn. 159.

We conclude that the defendant's claim that his sentence is illegal because it violates his constitutional protection against double jeopardy[6] is actually a claim of an improper conviction, which is, in reality, a collateral attack on his conviction and does not fall within the purview of Practice Book § 43-22. The court, therefore, properly dismissed the defendant's motion to correct

---

[6] A valid double jeopardy claim would fall within the purview of Practice Book § 43-22. "[T]he trial court had jurisdiction to alter the sentence pursuant to Practice Book § 43-22, because otherwise the constitutional prohibition against double jeopardy would have been violated." *State* v. *Cator*, 256 Conn. 785, 804–805, 781 A.2d 285 (2001). In the present case, for the reasons set forth in this opinion, the defendant's claim is not a colorable double jeopardy claim.

his sentence on the ground that it lacked jurisdiction to consider the motion.

The judgment is affirmed.

In this opinion the other judges concurred.